## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PRAMEELA INAGANTI and | : | |
| RAO INAGANTI, h/w, | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| COLUMBIA PROPERTIES | : | |
| HARRISBURG LLC D/B/A | : | |
| HARRISBURG COURTYARD | : | NO.  10-1651 |
| BY MARRIOTT AND COLUMBIA | : | |
| SUSSEX CORPORATION A/K/A | : | |
| HARRISBURG COURTYARD | : | |
| BY MARRIOTT, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                    July 26, 2011

    Currently pending before the Court is the Motion of Defendants Columbia Properties

Harrisburg LLC d/b/a Harrisburg Courtyard By Marriott and Columbia Sussex Corporation a/k/a

Harrisburg Courtyard By Marriott (collectively "Defendants") for Summary Judgment on the

Complaint filed by Plaintiffs Prameela and Rao Inaganti, husband and wife ("Plaintiffs").  For the

following reasons, the Motion is granted.

## I.    FACTUAL BACKGROUND[1]

    The event giving rise to this lawsuit occurred on January 29, 2008, at the Marriott Courtyard

Harrisburg (the "Hotel").  Plaintiff Prameela Inaganti was staying at the Hotel in connection with a

business trip for her employer SAP America.  (Defs.' Mot. Summ. J., Ex. D, Dep. of Prameela

---

[1]  The factual summary is based on a review of the evidence submitted by both parties on
summary judgment.  To the extent Plaintiffs dispute Defendants' evidence but do not provide any
contrary evidence, Federal Rule of Civil Procedure 56 requires that the Court accept Defendants'
assertions as true.

Inaganti, 10:4-9, 19:11-14, Sept. 9, 2010 ("Inaganti Dep.").)  She recalled that she arrived on

Monday, January 28, 2008, which was a "cold winter day" with temperatures maybe in the "30s [or]

40s."  (Id. at 20:4-12, 28:9-12, 28:13-18.)  She further indicated that there was no snow on the

ground and it was not raining.  (Id. at 28:19-24.)

On the morning of January 29, 2008, Mrs. Inaganti woke up, got ready, and headed out to

her car, which was parked on the side parking lot.  (Id. at 29:14-18.)  At the time, she was wearing

pants and a shirt, a winter jacket, and flat rubber-soled shoes.  (Id. at 31:5-21.)  She left the hotel

using the side entrance sometime between 7:00 and 7:30 a.m.  (Id. at 30:13-17, 32:19-20.)  As she

exited, she noted that it was neither too dark nor too bright, and that it was "drizzling and kind of

cloudy."  (Id. at 33:14-19.)  According to her observations, "everything seemed wet," but there was

no snow of any kind.  (Id. at 31:24-32:3, 38:20-24.)[2]  Nonetheless, she had no difficulty either

seeing the steps in front of her and where she needed to go, or walking down the steps.[3]  (Id. at

33:20-34:2, 40:4-10.)  She walked out, took a few steps down, and stepped onto the concrete

walkway.  (Id. at 30:21-23.)  Upon putting her foot on the concrete walkway, however, she "just slid

and fell on [her] back."  (Id. at 30:21-31:1.)  When asked if she noticed what caused her to fall, she

replied that she "could not see anything.  It's all black ice" and there was nothing otherwise visible.

(Id. at 41:14-42:22.)  Upon further questioning as to why she thought it was black ice if she could

not see it, she replied, "[b]ecause of the way that I slipped I could tell.  I had no control over my

---

[2]  Plaintiffs attach a report of temperature and weather data for Middletown, Pennsylvania for
Monday, January 28, 2008 from "Weather Underground, Inc." (the "Weather Report").  (Pls.'
Opp'n Mot. Summ. J., Ex. A.)  Aside from the fact that this report is unauthenticated, it describes
the weather on the day *before* the accident in question.  Page five of Plaintiffs' Response also
references a "weather tape."  No such tape, however, has been included with Plaintiffs'
submissions.

[3]  Plaintiffs' Opposition Brief denies that Mrs. Inaganti could see and asserts that the area outside
the side door was not lit and dark.  Notably, however, Plaintiffs cite to no evidence in support of
this proposition.  Indeed, this assertion is flatly contradicted by Mrs. Inaganti's own deposition
testimony.

fall." (Id. at 42:3-8.)  After she fell, Mrs. Inaganti got up fairly quickly because it was "freezing cold" outside.  (Id. at 42:9-14.)

At her deposition, Mrs. Inaganti was shown photographs of the area in which her accident occurred.  (Id. at 50:4-10.)  While viewing those photographs, she indicated that she had no problems walking down the steps of the side entrance and did not notice any ice on those steps.  (Id. at 53:16-21.)  Moreover, she did not observe any ice, snow, or anything else on the concrete slab where the fall actually occurred, but upon falling, her coat got a bit wet.  (Id. at 53:22-54:9.)  She admitted, however, that she never determined if she actually slipped on ice.  (Id. at 54:14-17.)

After her fall, Mrs. Inaganti went back into the hotel via the same side entrance she used to exit the hotel and just sat on the staircase hoping someone would see her.  (Id. at 44:20-45:18.)  Several minutes later, another guest asked if she needed help and then went to retrieve a hotel staff member.  (Id. at 46:2-12.)  Someone from the front desk arrived, at which point Mrs. Inaganti stated that she fell on ice outside.  (Id. at 47:14-49:8.)  The hotel employee called an ambulance for her.  (Id. at 49:10-15.)

The individual from the front desk with whom Mrs. Inaganti spoke was subsequently identified as Megan Stoner.  (Defs.' Mot. Summ. J., Ex. E., Dep. of Megan Stoner, 15:18-17:19, Dec. 3, 2010 ("Stoner Dep.").)  Mrs. Stoner testified that she first talked to Mrs. Inaganti around 7:25 or 7:30 a.m. for about five minutes, following which she called the ambulance.  (Id. at 17:7-10, 19:6-12.)  At no point that day did Mrs. Stoner observe the area where the fall occurred.  (Id. at 18:5-19:1.)  She did, however, prepare an incident report about the fall.  (Id. at 27:21-29:3; Inaganti Dep., Ex. 4.)  In that report, it was written[4] that "Mrs. Inag[ati] fell outside of the hotel due to ice. . . . The ice storm was very sudden as it was raining and that suddenly froze."  (Id.)

To corroborate the claim of black ice, Plaintiffs provided two additional pieces of evidence.

---

[4]  The report has two sets of handwriting, some of which was Mrs. Stoner's and some of which was that of Kevin Kumon, General Manager of the Hotel.

First, an individual named Bryon Long prepared a "Witness Statement" signed and dated September

27, 2010, indicating, in pertinent part, as follows:

> I did not witness this fall.  I did see Prameela being attended to.  There was light rain
> that morning and temperatures were hovering around freezing.  And there were a few
> patches of black ice as I remember.

(Pls.' Opp'n Mot. Summ. J., Ex. B.)  In addition, Plaintiffs supply a report from the Steelton Fire

Department Ambulance, written by EMS Kenneth Gonzalez, Jr., which states, in pertinent part:

> According to [Mrs. Inaganti], around 07:30 hours this morning while attempting to
> exit the hotel via the side entrance she slipped and fell.  [Mrs. Inaganti] fell onto a
> conc[rete] surface.  Conc[rete] at time of EMS AOS was complete ice covered.  [Mrs.
> Inaganti] denied striking her head or losing consciousness.  [Mrs. Inaganti] stated that
> she fell strait [sic] backward and landed flat on her back.

(Id. Ex. C.)[5]

Keith Komon, General Manager of the Hotel at the time of the incident, testified that, as part

---

[5]  Defendants contend that neither of these pieces of evidence are reducible to admissible
evidence and thus may not be considered on summary judgment.  It is well-established that upon
a motion for summary judgment, a court considers the non-moving party's *admissible* evidence.
Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  To be considered at this stage, the non-
moving party's evidence need not be in a form that is admissible at trial, but it must be
evidence that could be later presented in a form that "would be admissible at trial" or reducible to
admissible form.  J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir.1990)
(citing Williams v. Borough of West Chester, Pa., 891 F.2d 458, 466 n.12 (3d Cir. 1989)).  A
hearsay statement that is not capable of being admissible at trial, should not be considered on a
summary judgment motion.  Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir.
1999); Herring v. Del. Cnty., No. CIV.A.07-4395, 2009 WL 750189, at *4 (E.D. Pa. Mar. 20,
2009).  "Unsworn statements do not meet the requirements of 'affidavits' and thus cannot be
used to support motions for summary judgment or responses thereto."  Rodriguez v. Lauren, 77
F. Supp. 2d 643, 647 (E.D. Pa. 1999) (citing Small v. Lehman, 98 F.3d 762, 764 n.5 (3d Cir.
1996)).

Neither of the aforementioned statements have been sworn before a notary.  Moreover,
the EMS report was not signed by the individual making the report.  Accordingly, these
statements are not reducible to admissible evidence and may not be considered in support of
Plaintiffs' Response to the Motion for Summary Judgment.  Nonetheless, because the statements
do not preclude the entry of summary judgment in this case, and in fact provide support for the
grant of summary judgment, the Court need not strike them for purposes of this Motion.

4

of his job, he took care of the parking lot and sidewalks at the Hotel.  (Defs.' Mot. Summ. J., Ex. F, Dep. of Keith Komon, 9:16-10:14, 12:24-14:12, Dec. 2, 2010 ("Komon Dep.").)  On a regular basis, he would watch the weather to keep on top of storms and, on the day of the accident, there was no anticipated storm.  (Komon Dep. 14:18-15:11, 21:4-16.)  In the event of a coming storm, Kumon would keep extra staff on at the hotel to shovel and salt the sidewalks, and ensure that the parking lot was plowed and shoveled.  (Id. at 20:8-21:3, 22:7-23:17.)  As a general rule, the Hotel took preventative measures, such as pre-salting, even before a storm hit.  (Id. at 24:21-25:15.)  Moreover, as a matter of routine practice, the Hotel's engineers would begin periodic property walks starting at 6:30 in the morning to look for dangerous conditions inside and outside, including the presence of ice and snow.  (Id. at 40:6-41:2.)  Similar walk-throughs and inspections would occur at least eight times per day.  (Id. at 75:7-77:3.)  If the engineers noticed any black ice or snow, they would immediately correct the situation by salting.  (Id. at 77:18-78:4.)

On the day of the accident, Mr. Kumon did not notice anything icy on the sidewalk where Mrs. Inaganti fell.  (Id. at 37:9-19.)  Moreover, he had no prior knowledge that there was any black ice existing in the area around the Hotel that morning.  (Id. at 71:12-72:17.)  During Mr. Kumon's tenure at the Hotel, this was the only fall on ice of which he was aware.[6]  (Id. at 54:19-55:1.)  Both Mr. Kumon and Mrs. Stoner testified that shortly after Ms. Inaganti's fall, the Hotel salted the whole parking lot and the whole sidewalk area.  (Id. at 33:11-22; Stoner Dep. 26:6-10.)

Plaintiffs Prameela and Rao Inaganti commenced the current action on January 27, 2010, by filing a Writ of Summons in the Philadelphia County Court of Common Pleas.  On February 25, 2010, Plaintiffs served Defendants with the Complaint, which alleged two counts of negligence and two counts of loss of consortium.  Defendants successfully removed the case based on diversity jurisdiction under 28 U.S.C. § 1332(a).  Although Plaintiffs subsequently moved to remand, the

---

[6]  At the time of the incident, Mr. Kumon had been with the Hotel for almost three years.  (Id. at 39:12-16.)

Court denied their Motion on May 25, 2010.

On May 2, 2011, Defendants filed the present Motion for Summary Judgment.  Plaintiffs responded on May 24, 2011, and Defendants submitted a Reply Brief on June 6, 2011.  The Court now turns to the merits of this Motion.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating

the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden

by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."

Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than

simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec., 475 U.S.

at 586.  "[T]he non-moving party must rebut the motion with facts in the record and cannot rest

solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv.

Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).  If the nonmoving party "fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S.

at 322.  Moreover, the mere existence of some evidence in support of the nonmovant will not be

adequate to support a denial of a motion for summary judgment; there must be enough evidence to

enable a jury to reasonably find for the nonmovant on that issue.  Anderson, 477 U.S. at 249-50.

## III.    DISCUSSION

Defendants seek summary judgment on the entirety of Plaintiff's Complaint under three

separate theories.  First, they claim that liability is precluded by Pennsylvania's common law "hills

and ridges" doctrine.  Second, they assert that even if that doctrine does not apply, Plaintiffs have

failed to show that Defendants had notice of a dangerous condition giving rise to a duty of care.

Finally, Defendants argue that Plaintiffs have failed to positively identify what caused the fall, and

thus cannot prove that the accident resulted from a dangerous and hazardous condition.  The Court

addresses each argument individually.

### A.    The "Hills and Ridges" Doctrine

"Pennsylvania's 'hills and ridges' doctrine shields land owners or occupiers from liability

for generally slippery conditions resulting from ice and snow, provided the land owner or occupier

has not allowed ice and snow to 'unreasonably accumulate in ridges or elevations.'"  Comer v. Boro

Developers, Inc., No. CIV.A.09-415, 2010 WL 3069664, at *2 n.2 (E.D. Pa. Aug. 3, 2010) (quoting

Morin v. Traveler's Rest Motel, Inc., 704 A.2d 1085, 1087 (Pa. Super. Ct. 1987)).  Underlying this doctrine is the notion that "to require that one's walks be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere."  Wentz v. Pennswood Apartments, 518 A.2d 314, 316 (Pa. Super. Ct. 1986).  The "hills and ridges" doctrine "applies with equal force to both public and private spaces."  Morin, 704 A.2d at 1088.  If applicable, the doctrine mandates that a plaintiff seeking to recover against the landowner or occupier prove that "(1) snow and ice has accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to those traveling thereon; (2) the property owner had actual or constructive notice of the existence of this condition; and (3) the dangerous accumulation of ice and snow caused plaintiffs [sic] injuries."  Comer, 2010 WL 3069664, at *2 n.2 (citing Rinaldi v. Levine, 176 A.2d 623, 625 (Pa. 1962)).

"The doctrine, predicated on the assumption that icy formations are natural phenomena incidental to our climate, applies only where the snow and ice at issue are the result of natural accumulation following a recent snowfall."  Jung v. Marriott Hotel Servs., No. CIV.A.09-4955, 2010 WL 4703543, at *2 (E.D. Pa. Nov. 19, 2010).  As such, two main exceptions exist.  First, "liability can attach to a premises owner when conditions in the community are not generally slippery and when there is a localized, isolated patch of ice on that premises on which an individual slips."  Id. (citing Tonik v. Apex Garages, Inc., 275 A.2d 296 (Pa. 1971)).  Second, "liability can arise when an icy condition is caused by the defendant's neglect."  Id. (citing Beck v. Holly Tree Homeowners Assoc., 689 F. Supp. 2d 756, 763 (E.D. Pa. 2010)).  Where the doctrine does not apply, courts must use traditional tort principles to determine the merits of the negligence claim.  Id.

In a case strikingly analogous to the one presently before the Court, the plaintiffs, a husband and wife, had been staying at the defendant hotel nearby to which the wife was doing some temporary work.  Helbing v. Wyndham Hotels & Resorts, LLC, No. CIV.A.10-1117, 2011 WL 601274, at *1 (M.D. Pa. Feb. 11, 2011).  The night before the accident in question, the wife noted

8

that it was cold and drizzling and the weather report was calling for winter storms after midnight, but there was no "slipperyness" at the hotel.  Id.  The next morning, the wife looked out the hotel window and remarked that it appeared to be raining because "everything was just so shiny."  Id. at *2.  The plaintiffs left their room around seven or seven thirty in the morning and walked out the main entrance, under a portico, when they again observed that the asphalt on the parking lot looked shiny, like it was wet.  Id.  As the husband stepped from the brick area onto the asphalt at the hotel entrance, he fell.  Id.  When the wife went to help him, she also began to slide.  Id.  Records from the National Weather Service in York, Pennsylvania for that day indicated that freezing rain began around 4:30 a.m. and continued through 8:15 a.m.  Id.  The wife also testified that at the time her husband fell, it was sleeting and that the entire asphalt area near the portico was covered with a sheet of ice, not just a patch.  Id.  The plaintiffs subsequently sued the hotel alleging that the husband later died from injuries suffered as a result of that fall.  Id.

The district court, however, granted summary judgment in favor of defendants, finding that the "hills and ridges" doctrine precluded recovery.  Specifically, it noted that there were generally slippery conditions in the Gettysburg area, including a sheet of ice in the hotel parking lot and on plaintiffs' car.  Id. at *3.  Moreover, the court remarked that there was "no snow or ice that had accumulated at the hotel in ridges or elevations of such size and character as to constitute a danger to pedestrians."  Id.  Indeed, the wife "only testified to black ice where her husband fell and to a sheet of ice in the parking lot."  Id.  Finally, the court observed that the "hills and ridges" doctrine barred any reliance on a failure to warn theory.  Id. at *4; see also Beck v. Holly Tree Homeowners Ass'n, 689 F. Supp. 2d 756, 762-66 (E.D. Pa. 2010) (holding that plaintiff, a townhouse owner, was barred by "hills and ridges" doctrine from suing property management company from her slip and fall on black ice since the ice was the result of the entirely natural phenomena of melting and refreezing snow); Convery v. Prussia Assoc., No. CIV.A.99-2469, 2000 WL 233243, at *2 (E.D. Pa. Mar. 1, 2000) (holding that business invitee of hotel was barred from suing hotel, under hills and

ridges doctrine, when she fell on black ice, as the evidence showed that snow stopped falling about ten hours before the accident, that temperatures had not risen to the point where snow might have melted away, and that the surface of the parking lot gave off the appearance of "wetness," thereby creating "generally slippery conditions" in the hotel's parking lot that evening).

Similarly, in the present case, the hills and ridges doctrine precludes any recovery under a negligence theory by Plaintiffs against Defendants.  First, assuming that black ice was the actual cause of Mrs. Inaganti's fall,[7] the evidence establishes the presence of generally wet and cold conditions in the Harrisburg area at the time of the accident.  On the day that Ms. Inaganti arrived, she noted it being a "cold winter day" with temperatures in the 30s or 40s.  (Inaganti Dep. 28:13-18.)  The following morning, when she went to leave the hotel, she observed that the weather was "drizzling and kind of cloudy" and that "everything seemed wet," although there was no snow of any kind.  (Id. at 31:24-32:3, 33:14-19, 38:20-24.)  Indeed, she explicitly stated that, "[t]he only thing I observed was it's drizzling.  I saw the ground all looked wet, the concrete pavement, the parking lot, everything looked wet.  I thought it's all wet."  (Id. at 38:20-24.)  After she fell, she got up quickly because it was "freezing cold" outside.  (Id. at 42:9-14.)  Similarly, the Hotel's incident report noted that the ice storm "was very sudden as it was raining and then suddenly froze." (Inaganti Dep., Ex. 4.)  Keith Komon remarked that the road conditions were fine as he drove to work at 7:45 a.m. with no snowfall or ice, but with a mist or light rain.  (Komon Dep. 12:3-7, 70:12-71:16.)  Even Plaintiffs' own questionably admissible evidence suggests that temperatures had dipped below freezing in the morning, that black ice was naturally occurring as a result, and that the concrete on the parking lot was completely ice-covered.[8]  (Pls.' Opp'n Mot. Summ. J., Exs. A-C.)

---

[7]  The Court does not find that this fact has been proven by any evidence supplied by Plaintiffs, but, for purposes of this Motion, simply assumes it to be true.

[8]  Plaintiffs specifically argued in their brief that "on January 28, 2008 temperatures were hovering between 20 degrees and 41 degrees and overnight there were freezing temperatures until 9:00 a.m. on January 29, 2008."  (Pls.' Opp'n Mot. Summ. J. ¶ 11.)

In other words, *all* of the evidence of record reveals that the general conditions in the area were wet, with temperatures randomly dropping below freezing.  Given these facts, it is a more than reasonable inference that the rain froze creating a generalized condition of naturally-occurring black ice in the vicinity of the Hotel.  In light of this record, the Court finds no genuine issue regarding the fact that the patch of black ice on which Plaintiff slipped was neither isolated nor localized, and that it was caused by purely natural phenomena.

Second, none of the evidence suggests that snow or ice had accumulated at the Hotel in ridges or elevations of such size and character as to constitute a danger to pedestrians.  Ms. Inaganti stated that when she arrived at the hotel the day before, there was no snow on the ground and it was not raining.  (Inaganti Dep. 28:9-24.)  The following morning, she noted only that the ground, concrete pavement, and parking lot looked wet, but otherwise there was nothing visible.  (Id. 38:17-24, 41:14-42:22.)  Corroborating this testimony, Mr. Kumon indicated that when he arrived at work on the morning of the fall, there was no snow either in the parking lot or sidewalk area from a previous snowfall.  (Kumon Dep. 12:19-23.)

In short, like the Helbring case, the Court must find that the "hills and ridges" doctrine precludes Plaintiffs from recovering against Defendants under a negligence theory.  Assuming Ms. Inaganti could prove, as she alleges, that she slipped on black ice, such ice formations are "natural phenomena incidental to our climate."  Jung, 2010 WL 4703543, at *2.  The conditions in and around Harrisburg were, by all accounts, generally wet, with some below freezing temperatures.  Such conditions would naturally result in some formation of black ice.  Moreover, although Plaintiffs argue that Defendants should have been aware of the icy condition and should have salted the parking lot, the hills and ridges doctrine, when applicable, only permits liability if the icy condition is actually *caused* by the defendant's neglect.  Beck, 689 F. Supp. 2d at 763.  Finally, nothing in the record reveals any unreasonable accumulation of ice or snow at the hotel.

In an effort to escape this seemingly inevitable conclusion, Plaintiffs cite to three cases, all

of which the Court finds inapposite.  First, Plaintiffs reference <u>Smith v. Allen & O'Hara Devs., Inc.</u>, No. CIV.A.95-7775, 1996 WL 529998 (E.D. Pa. Sept. 18, 1996).  In that matter, the plaintiff slipped and fell on a patch of ice in the driveway of the hotel where he had been staying for a couple of days.  <u>Id.</u> at *1.  Defendant moved for summary judgment under the "hills and ridges" doctrine. The court remarked that although the defendant assumed that the precipitation on the day of the fall caused the ice where the plaintiff slipped, there was "the possibility that the ice was already there and the defendant failed to remove it in the course of maintaining the parking lot that day."  <u>Id.</u> at *2.  More importantly, the court noted that there was an "absence of clear direction from the Pennsylvania Supreme Court on when the 'hills and ridges' doctrine is applicable."  <u>Id.</u>  Ultimately, it declined to apply the doctrine, noting that "[i]f the 'hills and ridges' doctrine applies only when fresh snow blankets the ground, that condition may not have occurred on January 27, 1994.  If the 'hills and ridges' doctrine applies whenever any sort of precipitation makes the ground slippery, including rain on existing ice, it might apply in the present case."  <u>Id.</u>  This Court, however, does not face the same "absence of clear direction" from the Pennsylvania courts.  Indeed, subsequent to <u>Smith</u>, the Pennsylvania Supreme Court issued its decision in <u>Morin v. Traveler's Rest Hotel, Inc.</u>, 704 A.2d 1085 (Pa. 1997), wherein it expressly extended the "hills and ridges" doctrine to the situation where generally slippery conditions caused by precipitation – including coatings of black ice – exist.  <u>Id.</u> at 1088.

Second, Plaintiff relies on <u>Herbst v. Inven Assoc.</u>, 35 Pa. D.&C. 4th 167 (1998), in which the court found that "[u]pon reviewing the facts of this case, it is unclear whether plaintiff's fall was the result of a generally slippery condition following a recent snowfall, or the melting and refreezing of ice over the course of a long winter."  <u>Id.</u> at 174.  It went on to note that "it is our finding that a question remains as to whether plaintiff's fall was caused by the natural accumulation of ice following a recent snowfall, or a dangerous icy condition which was allowed to remain for an unreasonable length of time.  This question can only be answered by a jury."  <u>Id.</u> at 175.  Again,

however, the court conceded that "[i]f the icy condition of the parking lot was, in fact, the result of a recent snowfall combined with immediate fluctuating temperatures, a generally slippery condition may have existed and the 'hills and ridges' doctrine would apply."  Id.  In the present case, that same factual question does not exist.  All the evidence shows, and both parties agree, that there was rain in the Harrisburg area on the morning of the accident combined with fluctuating temperatures.  Plaintiffs presented absolutely no evidence that Defendants allowed any icy condition to remain for an unreasonable length of time.

Finally, Plaintiffs reference Harvey v. Rouse Chamberlin, Ltd., 901 A.2d 523 (Pa. Super. Ct. 2006).  In that matter, snow had fallen in the area from January 20, 2001 to the early morning of January 21, 2001.  Id. at 525.  After it had stopped snowing and the roads had been plowed by a company employed by defendant, the plaintiff decided to take a walk.  Id.  Some portions of the road were covered with packed snow from the snowplows and there were patches of cleared asphalt.  Id.  As plaintiff approached the sidewalk in front of a home, she noted that there was snow on the sidewalk and decided to walk in the road, which appeared to be clear and dry.  Id.  While walking in the road, the plaintiff slipped and fell on black ice.  Id.  The court found that the "hills and ridges" doctrine did not apply because "the evidence introduced by [plaintiffs] . . . suggest[ed] that the condition of the land was influenced by human intervention.  In other words, given [the contractor's] interaction with the *snow via* snow plowing, the *ice* . . . could not have been 'the result of an *entirely natural* accumulation."  Id. at 527 (emphasis in original).  In stark contrast, Plaintiffs in this case make absolutely no allegation that the alleged black ice or dangerous condition was caused or impacted in any way by Defendants' conduct.  Indeed, unlike in Harvey, there is no genuine dispute that the alleged black ice was the result of purely natural phenomena.

In light of the foregoing, the Court must find that the "hills and ridges" doctrine forecloses Plaintiffs' suit for negligence against Defendants in this case.  No material factual dispute exists as to the prevalence of rainy and freezing cold conditions in the area on the day of the accident.

Moreover, Plaintiffs make no allegation that the icy condition was caused by any action of Defendants or that Defendants allowed the ice to accumulate in such ridges and elevations as to be a danger.  As such, summary judgment is warranted on this ground.

**B.**     **Whether a Genuine Issue Exists as to Whether Defendants Had Notice of the Alleged Dangerous Condition**

Alternatively, the Motion for Summary Judgment contends that Plaintiffs produced no evidence establishing either Defendants' actual knowledge that there was ice in the area where Plaintiff fell or Defendants' constructive knowledge of the ice based on the length of time the alleged ice had been in the area prior to the alleged fall.  The Court agrees.

Where the hills and ridges doctrine is inapplicable, courts turn to traditional tort principles to determine whether plaintiff has sufficiently stated a claim for negligence.  Beck, 689 F. Supp. 2d at 767.  Under this principle:

> A landowner owes a duty to protect invitees from the condition of its premises only if it: (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) failed to exercise reasonable care to protect them against the danger.

Id. (quoting Smith, 1996 WL 529998, at *2; RESTATEMENT (SECOND) OF TORTS § 343 (1965)). Section 343 of the Restatement (Second) of Torts, which defines the duty that a possessor of property owes to a business invitee, states that "a possessor of property is only liable for injuries to a patron caused by a dangerous condition on the premises if he 'knows of or reasonably should have known of the condition.'"  Tameru v. W-Franklin, L.P., 350 Fed Appx. 737, 739 (3d Cir. 2009) (quoting Swift v. Ne. Hosp. of Pa., 690 A.2d 719, 722 (Pa. Super. Ct. 1997)).  Thus, the invitee must prove either that the defendant "had a hand in creating the harmful condition" or that it "had actual or constructive notice of such condition."  Id. at 739-40 (internal quotations omitted). "[A]bsent notice of a dangerous or defective condition, a land owner cannot be liable to an invitee

injured by such a condition." <u>Tameru v. W-Franklin, L.P.</u>, No. CIV.A.07-1965, 2008 WL 4272637, at *4 (E.D. Pa. Sep. 11, 2008).

Two factually similar cases from within the Third Circuit offer significant guidance.  First, in <u>Tameru v. W-Franklin, L.P.</u>, the plaintiff went into the defendant hotel at around 10:46 p.m. to get a cup of coffee and, on her way out, slipped and fell on a patch of ice.  350 Fed. Appx. at 738.  Before she slipped, she noticed that the ground was wet, but she had not seen any ice.  <u>Id.</u>  A hotel security guard prepared an incident report stating that the entire pavement area was "wet" but "was not icy."  <u>Id.</u>  He also indicated that he had toured the perimeter of the hotel at least three times prior to the fall and had he observed a hazardous condition such as ice, he would have noted it in the hotel log.  <u>Id.</u>  Further, the hotel's director of security testified if any staff had reported ice or snow conditions, the area would have been salted.  <u>Id.</u>  A weather expert concluded that the weather conditions at the time of plaintiff's fall were consistent with black ice, and that any meltwater that had formed earlier in the day would have begun to freeze at around 8:00 p.m.  <u>Id.</u> at 739.

The Third Circuit affirmed the district court's grant of summary judgment on the basis that there was no showing of actual or constructive notice.[9]  <u>Id.</u> at 740-41.  The court remarked that "[w]ithout any evidence that the ice was observable for any significant period of time prior to the accident, a jury may not reasonably infer that the hotel had constructive notice of the hazardous condition."  <u>Id.</u> at 740.  In addition, it noted that "[w]eather conditions can only support an inference of actual or constructive notice of a hazardous condition when coupled with evidence that the defendant had knowledge of both the weather condition at the time of the accident and the fact that the weather condition created hazards on the premises."  <u>Id.</u>   The evidence showed that the

---

[9]  The district court briefly discussed the "hills and ridges" doctrine in its opinion granting summary judgment.  The doctrine clearly did not apply, however, because both parties agreed that Hotel patrons had been tracking water and possibly snow into the entryway where plaintiff fell.  Accordingly an issue of fact remained as to whether the ice that allegedly caused the fall was the result of wholly natural phenomena.  <u>Tameru v. W-Franklin, L.P.</u>, 2008 WL 4272637, at *3.

15

temperature had fallen enough for ice to form in the area near the hotel and, by the time plaintiff fell, ice had in fact formed.  Id.  Nothing established the defendant's knowledge that the ice had actually formed in that area, given the security manager's testimony that he had never before seen ice form in that area, combined with plaintiffs' lack of evidence that the hotel should have known of ice in that area.  Id.  Further, during the routine security sweep at 9:17 p.m., the security guard did not detect any ice.  Id.  The court concluded that, "[d]espite the meteorological evidence that the temperature had fallen below freezing in the hours before the accident, there was no evidence that ice had existed for any length of time before [plaintiff] observed it."  Id.

Similarly, in Beck v. Holly Tree Homeowners Ass'n, the court tackled the issue of what notice gives rise to a duty of care in situations involving black ice.  689 F. Supp. 2d at 766-67.  In that matter, the plaintiff, a townhouse owner, sued the property management company due to a slip and fall on black ice in the parking lot of the complex.  Id. at 758.  While the court expressly found that the "hills and ridges" doctrine barred the suit, id. at 766, it nonetheless went on to comment that even if the doctrine did not apply, plaintiff had not shown that defendants had actual or constructive notice of the alleged dangerous condition.  Id. at 766-67.  Specifically, it remarked that although approximately one inch of snow fell the day before the accident and the snow removal contractor was on the premises the day before spreading a de-icing material over the grounds, it did not necessarily follow that the property management company had notice of the black ice condition alleged to have caused the fall.  Id. at 767.  Moreover, there was insufficient evidence that defendants had constructive notice of the black ice, since weather data showed that any lingering snow had not melted until the day before and temperatures conducive to the formation of black ice only occurred after 4:30 p.m. on the day of the accident, and only an hour and a half before plaintiff fell.  Id.  Ultimately, the court determined that "[a]bsent a showing that [defendants] had either actual or constructive notice of such a condition, Defendants cannot be held liable for plaintiff's alleged injuries."  Id. at 769.

The present case offers almost the identical situation.  First, by all accounts, there was no snow or ice in the area on the day before the accident.  Mrs. Inaganti testified that when she arrived at the hotel on the day before, there was no snow on the ground and it was not raining.  (Inaganti Dep. 28:9-24.)  Second, the evidence suggests that the weather on the morning of the accident had turned to a light rain.  In particular, both Mrs. Inaganti and Mr. Kumon directly observed drizzling rain, cloudiness, and general wet conditions that morning.  (Kumon Dep. 11:24-12:7, 55:12-56:4; Inaganti Dep. 31:23-32:3, 33:14-19, 38:20-24.)  Third, Plaintiffs presented no evidence that the Hotel had any actual notice of the ice and, in fact, Mr. Kumon flatly denied such notice particularly in light of the frequent property inspections performed by the Hotel engineers.  (Kumon Dep. 40:6-41:2, 63:11-22, 71:17-72:17, 77:18-78:4.)  He further remarked that there was no warning of any impending storms or bad conditions.  (Kumon Dep. 23:18-25:11, 38:15-39:3.)  Fourth, the parties agree that the temperatures had suddenly dropped, thus creating sudden conditions conducive to the formation of black ice around the time that Ms. Inaganti fell.  The incident report, repeatedly cited by Plaintiffs, specifically stated, "[t]he ice storm was very sudden as it was raining and then suddenly froze.  We started salting as soon as we noticed (7:30 a.m.), it was freezing."  (Inaganti Dep., Ex. 4.)  Even Plaintiffs' own exhibit from witness Bryon Long indicated that "[t]here was light rain that morning and temperatures were hovering around freezing.  And there were a few patches of black ice as I remember."  (Pls.' Opp'n Mot. Summ. J., Ex. B.)  Finally, Plaintiff has not shown any other prior incidents of a similar nature in this area of the Hotel that could have given rise to constructive notice.  Mr. Kumon expressly remarked that he was un-aware of any fall on ice during his three-year tenure as General Manager of the Hotel.  (Kumon Dep. 54:22-55:1.)  Given the admittedly brief existence of the dangerous condition prior to Plaintiff's fall, the absence of any showing of actual notice, and the lack of any other circumstances suggesting constructive notice, the Court concludes that Plaintiffs' negligence claim against Defendant also fails under traditional tort

principles.[10]

## IV.    CONCLUSION

In sum, Plaintiffs simply cannot recover in negligence against the Defendants.  First, the "hills and ridges" doctrine specifically acts to protect an owner of land for general slippery conditions to avoid imposing an impossible burden on landowners due to general climatic changes. Wentz, 518 A.2d at 316.  This case presents precisely the situation to which the doctrine was intended to apply.  Moreover, even assuming Plaintiffs could avoid the operation of the doctrine, their case still fails under traditional tort principles, as Plaintiffs have failed to create any issue of fact regarding whether Defendants knew or should have known of the alleged dangerous condition on which Mrs. Inaganti fell.  Accordingly, Defendants' Motion for Summary Judgment is granted and the case is dismissed in its entirety.

---

[10]  As the Court has already established two bases for granting Defendants' Motion for Summary Judgment, it is unnecessary to consider Defendants' causation argument that there is no proof that Ms. Inaganti fell on black ice.

18